# EXHIBIT A

Sophia Goren Gold (SBN 307971)
*sgold@kalielgold.com*
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

Jeffrey D. Kaliel (SBN 238293)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Annick M. Persinger (SBN 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
10880 Wilshire Blvd., Suite 1101
Los Angeles, CA 90024
Telephone: (510) 254-6808

*Attorneys for Plaintiff and the Proposed Class*

**Electronically FILED by Superior Court of California, County of Los Angeles 4/01/2026 10:59 AM David W. Slayton, Executive Officer/Clerk of Court, By A. Radillo, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

BILL MEREWHUADER, on behalf of himself and all others similarly situated,

Plaintiff,

v.

AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,

Defendants.

Case No. 26STCV10457

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Bill Merewhuader ("Plaintiff"), by and through counsel, brings this Class Action Complaint ("Complaint") against Defendants Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Defendants" or "Amazon"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this putative class action against Amazon arising from its unfair and deceptive scheme of designing, manufacturing, distributing, advertising, marketing, and selling its first- and second-generation Fire TV Stick streaming device as an "instant" media streaming stick with no "buffering" so that shows "start instantly," and then later "bricking" its first- and second-generation Fire TV Stick devices rendering them nearly inoperable.

2. Specifically, Amazon touted that its Fire TV Stick devices would provide "instant" streaming; would be fast and easy use; and would end "buffering," while failing to disclose that it would discontinue all software support for the Fire TV Stick devices and render them almost inoperable for most of its users.

3. In removing support for its once "instant" streaming devices, Amazon forced consumers to purchase a new generation of the devices to have the same "instant" streaming benefits.

4. Amazon never told consumers prior to purchase that their Fire TV Stick devices' ability to stream media content (*i.e.*, their main advertised functionality) could be severely restricted for any reason, at any time, without compensation to purchasers.

5. Plaintiff thus brings this action because (1) Amazon's bricking of these devices constitutes an unfair and unlawful business practice, (2) Amazon deceived consumers at the point of purchase by omitting that it could brick these devices by removing core software functionality long before the useful life of the hardware had expired, and (3) Amazon's bricking of these devices breached the implied covenant of good faith and fair dealing in the purchase transaction by undermining the benefit of the bargain.

6. Amazon's bricking of its first- and second-generation Fire TV Stick devices is fundamentally unfair. As the FTC has recognized, consumers generally expect that the devices they buy will work and keep working, and that includes the software necessary to make the devices work. When a

company unilaterally decides to make a device that it manufactured and sold stop working before the end of its physical useful life, that is unfair.

7. Amazon's omission of its ability to severely throttle the performance of its Fire TV Stick devices at the point of sale was also deceptive. For both generations of Fire TV Sticks, Amazon failed to mention at the point of sale this potential loss of functionality, while at the same time advertising that the devices provided "instant" streaming of hundreds of thousands of movies and shows from streaming platforms including Amazon, Netflix and more. Additionally, for second generation Fire TV Sticks, Amazon further touted Alexa Voice Command that provided "instant voice search."

8. Plaintiff and other consumers therefore reasonably believed that their devices would continue to possess the same "instant" functionality throughout their physical useful life spans because Amazon never told consumers prior to purchase that this functionality could be reduced or eliminated for any reason, at any time, and without compensation to purchasers.

9. What's worse, Amazon seemingly "bricked" the first- and second-generation Fire TV Stick devices to force consumers to upgrade to newer versions of the same device, thereby coercing consumers into purchasing a newer version of the same product.

10. Plaintiff and Class Members could not have anticipated that the Fire TV Stick devices' value and usefulness could be terminated by Amazon for any reason at all—though that is exactly what happened.

11. Amazon also breached the implied covenant of good faith and fair dealing inherent in the purchase transaction because it frustrated the fundamental basis of bargain, which was that, in exchange for the purchase price, Amazon would provide "instant" streaming capabilities, without waiting of hundreds of thousands of movies and shows from a list of streaming platforms, as well as "instant" voice command built in with Alexa in the second generation.

12. Plaintiff and Class Members would not have purchased the Fire TV Stick devices or would have paid substantially less for them had they known that their core functionality was at risk of being stripped away at the time of Amazon's choosing—or that Amazon could abandon all software support for the Fire TV Stick devices despite them having years left in their physical useful life.

13. As a result of Amazon's misconduct as alleged herein, Plaintiff and the Class seek actual

damages, restitution, disgorgement of profits, statutory damages, attorneys' fees and costs, public injunctive relief, and all other relief the Court deems proper.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10 because this case is a cause not given by statute to the other trial courts.

15. Plaintiff is informed and believes that the Court has personal jurisdiction over Defendants as Defendants conduct sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market by conducting business throughout California, including in Los Angeles County, which has caused both obligations and liability of Defendants to arise here.

16. Venue is proper in this Court as relevant transaction(s) occurred in this County.

## PARTIES

17. Plaintiff is and was, at all relevant times alleged herein, a citizen and resident of the State of California. Plaintiff purchased a second-generation Fire TV Stick device from third-party retailer Best Buy in 2018.

18. Defendant Amazon.com, Inc., is a corporation formed and existing under the laws of Delaware with its headquarters located in the State of Washington.

19. Defendant Amazon.com Services LLC is a subsidiary of Amazon.com, Inc. and a limited liability company organized under the laws of Delaware. Defendant Amazon.com Services LLC is responsible for managing Amazon.com Inc.'s extensive e-commerce platform, including product sales.

## FACTUAL ALLEGATIONS

### I. Amazon Launches its First- and Second-Generation Fire TV Stick Devices and then Renders them Obsolete.

20. In November 2014, Amazon launched the first generation of its Fire TV Stick device. The device consists of a small adapter and a Wi-Fi-enabled remote (pictured below). When the user connects the adapter to their TV's HDMI port, the user can stream movies and TV shows and access a variety of applications and games on the device using the remote.




21. On the first-generation Fire TV Stick device's packaging (seen below), Amazon touted the device as offering "[i]nstant [s]treaming" with "[o]ver 200,000 Movies and TV episodes" including Amazon, Netflix, Disney Channel, YouTube.com, Watch ESPN, Crackle, Plex, Hulu Plus, Pandora, and more.




Effortless to setup and use
Simply plug into an HDTV and start streaming in minutes.
Easily navigate and discover movies, TV shows, apps and games with the included remote.
Instant streaming with ASAP
No more waiting for your movies and shows to buffer – ASAP learns what Amazon movies and shows you like so they start instantly.
Watch Amazon, Netflix and more
Discover over 200,000 movies and TV episodes, plus sports, news, music and games from WATCH Disney Channel, YouTube.com, WatchESPN, Crackle, Plex, Hulu Plus, Pandora and more.
Add to the fun
See trivia plus actor and character details with X-Ray on your Fire HDX tablet. Instantly search using just your voice with the optional Fire TV Voice Remote or the free mobile app.
DOLBY
DUAL CORE
DUAL-BAND WIFI
1080P HD
What's included: Amazon Fire TV Stick, Amazon Fire TV Remote, 2 AAA batteries, power adapter with USB cable and HDMI extender cable.
What's needed: HDTV with HDMI input and high speed internet with WiFi.
Optional accessories (sold separately): Amazon Fire TV Voice Remote and Amazon Fire Game Controller.

22. In October 2016, Amazon launched the second-generation version of the Fire TV Stick device.

23. On the packaging for the second-generation Fire TV Stick device (seen below), Amazon advertised that it came "with Alexa Voice Remote" that provided "Instant voice search with Alexa Voice Remote," an "ultra-fast processor," as well as the ability to "Find your favorites instantly" from "17,000+ channels," including "500,000 movies and TV episodes" from Netflix, Hulu, YouTube, HBO, Showtime, Amazon Video, NBC, and more.






24. Amazon's touting of the Fire TV Stick devices' fast-instant streaming capabilities extended beyond their packaging. In a 2014 press release, Amazon described the device as "the most powerful streaming media stick available" and as offering "instant streaming." Amazon further described the device as providing "fast[] and … fluid navigation" of streaming platforms and other features.

25. But Amazon's representations regarding the Fire TV Stick devices' ability to provide "instant" streaming were later rendered false.

26. In December 2022, Amazon abruptly stopped providing any software support or updates for first-generation Fire TV Stick devices.

27. In March 2023, Amazon similarly stopped providing any software support or updates for second-generation Fire TV Stick devices—despite having represented to consumers on its website that software support for second-generation Fire TV Stick devices was guaranteed through 2024.

28. Although users can still stream media content on their devices, many users of first- and second-generation Fire TV Stick devices (like Plaintiff) have experienced significant performance issues following Amazon's removal of software support and updates.

29. These issues include: (1) a significant, noticeable decrease in streaming speed; (2) an inability to navigate through digital menus on the device without experiencing significant delay; and (3) a significant increase in loading times for applications bundled with the device when the user attempts to use those applications.

30. Indeed, many first- and second-generation Fire TV Stick devices have stopped working altogether following Amazon's abrupt discontinuation of software support and updates.

31. Due to the removal of software support by Amazon, the Fire TV Stick devices are no longer the "instant" streaming devices that were sold to Plaintiff and consumers like him.

32. By refusing to provide further software support and updates, Amazon has rendered these devices essentially bricks compared to the high-speed, reliable Fire TV Stick devices consumers originally purchased (and the newer-generation Fire TV Stick devices that Amazon has marketed and sold since rendering its older devices obsolete).

## II. <u>Amazon's Omissions and Contradictory Advertising</u>

33. During the entire period that Amazon sold the first- and second-generation Fire TV Stick

devices, it uniformly omitted at the point of purchase that their software functionality could become obsolete long before the useful life of the hardware of the devices.

34. Specifically, Amazon omitted at the point of sale that it could remove the software support that enabled users to enjoy the high-speed streaming functionality advertised as a core feature of the devices.

35. Representations that were contrary to Amazon's omission that the software support and updates supporting the functionality of the devices could be gutted long before their useful life include Amazon's touting of "instant" streaming capabilities, along with other similar representations about the speed, power and fluid performance of the devices on its packaging and in its advertising.

36. Amazon had a duty to disclose the potential loss of functionality of its first- and second-generation Fire TV Stick devices because it advertised the devices as possessing, among other things, "instant" and "[a]dvanced" streaming, easy navigation, an "ultra-fast processor" and "fast and fluid" performance.

37. The devices' continued software functionality also formed the fundamental basis of the bargain: consumers would pay for an expensive electronic device, and in return, they would receive a device capable of "instant" (*i.e.* reliable, and high-speed) streaming functionality.

38. Amazon's misrepresentations and omissions were made on its own website as well as the websites of major retailers such as Best Buy.

39. Consumers were not informed at or before the time of purchase that the first- and second-generation Fire TV Stick devices' core "instant" streaming functionality could be severely limited at the time of Amazon's choosing, without compensation to purchasers, even when the physical components of the device continued to function without issue.

40. Consumers reasonably understood that the first- and second-generation Fire TV Stick devices would continue to function as advertised as "instant" streaming devices throughout their useful life.

41. Amazon has not issued refunds to any consumers for their bricked first- and second-generation Fire TV Stick devices.

42. Instead, Amazon has done the opposite by actively encouraging consumers who bought

first- and second-generation Fire TV Stick devices to buy newer models of those devices and spend even more money on a newer version of the same product.

## III. Amazon's Throttling of the First- and Second-Generation Fire TV Stick Devices' Core Functionality through its Intentional Discontinuation of Software Support for the Devices Constitutes an Unfair "Software Tethering" and "Bricking" Practice

43. Manufacturers are incentivized to render devices obsolete so that they can manufacture and sell new ones. Increasingly, by failing to support otherwise functional devices with software functionality included at sale, companies like Amazon unilaterally, and, prematurely, decide that devices are obsolete even though the actual hardware of the device itself has not run its useful life and functions perfectly. Left with a device that is either useless or with considerably less software functionality, consumers are forced to buy updated devices—often from the same manufacturers.

44. In a recent staff report, the Federal Trade Commission ("FTC") acknowledged the harm that results when manufacturers cut back on making software updates to products like the Fire TV Stick device, eventually turning those products into non-functional "bricks" with limited to no use. As the FTC explains, the failure to provide software and the failure to disclose the duration of software support are deceptive practices that cause consumers harm that they cannot avoid:

> Manufacturers marketing a device as having certain features and then subsequently failing to provide software updates needed to maintain those features raises concerns about consumer harm resulting from deceptive practices. A representation, omission or practice is deceptive and violates the FTC Act if it is material and likely to mislead a consumer acting reasonably under the circumstances. Thus, if a manufacturer makes an express or implied representation regarding how long the product will function or be useable, it may be a deceptive practice if the manufacturer fails to disclose how long it will provide necessary software updates.
>
> Similarly, the failure to provide software updates or the failure to disclose the duration of software support raises concerns about harm consumers cannot avoid. A practice is unfair and violates the FTC Act if it is likely to cause substantial injury that could not be reasonably avoided by consumers and the injury is not outweighed by any offsetting consumer or competitive benefits that the sales practice also produces. Thus, when evaluating a manufacturer's failure to provide updates or its failure to disclose the duration of software support it is appropriate to consider the scope of injury caused by the failure, whether this injury is reasonably avoidable by consumers, and whether there may be any offsetting benefits arising from the failure to provide software updates or disclosures about the

duration of software support.[1]

45. The staff report builds on a prior blog post by the FTC that noted, "there are serious issues at play when consumers purchase products that unexpectedly stop functioning due to a unilateral decision by the company that sold it. Consumers generally expect that the things they buy will work and keep working, and that includes any technical or other support necessary for essential functioning."[2]

46. Non-profit organization, Truth in Advertising ("TINA"), similarly acknowledged this practice as an increasingly prevalent false advertising practice it calls "software tethering," "which is when a manufacturer uses software to control how a connected device functions after purchase, if it continues to function at all," and may range from "taking away features that were advertised at the time of purchase or completely 'bricking' a device through software updates[.]"[3]

47. Consumer Reports also highlighted the concern behind companies' lack of transparency in disclosing the lifespan of a connected smart device before consumers commit to purchasing:

> The refusal to disclose how long a consumer can expect their connected appliances to stay secure and retain the exciting software-based functions that a consumer may have paid extra for is an example of how efforts to turn everyday devices into internet-connected computers have left a regulatory loophole that allows manufacturers to infringe on a consumers' ability to truly own a product. . . .
>
> And consumer should know when this potential loss of features or functions will happen before they plunk down their hard-earned cash on a device or appliance. Only when consumers can see how long a manufacturer plans to stand by a connected product can they make an informed decision about what they are spending their money on. Absent this information, a consumer could spend thousands on a large appliance, only for the features they rely on to stop working in a few years.[4]

---

[1] *Smart Device Makers' Failure to Provide Updates May Leave You Smarting*, FTC Staff Perspective, Nov. 2024, available at https://www.ftc.gov/system/files/ftc_gov/pdf/smart-device-makers-failure-to-provide-software-updates-may-leave-you-smarting.pdf [https://perma.cc/EW9W-TENT].

[2] *What Happens When the Sun Sets on a Smart Product?*, FTC Business Blog, July 13, 2016, available at https://www.ftc.gov/business-guidance/blog/2016/07/what-happens-when-sun-sets-smart-product.

[3] *2025 Deceptive Ad Trends*, Consumer News, Truth in Advertising.org, Jan. 6, 2025, available at https://truthinadvertising.org/articles/2025-deceptive-ad-trends/ [https://perma.cc/J2B2-TKAV].

[4] *When Will Your Smart Appliance Turn Dumb? A Lack of Transparency Leaves Consumers in the Dark*, Consumer Reports, Sept. 25, 2024, available at https://innovation.consumerreports.org/when-will-your-smart-appliance-turn-dumb/ [https://perma.cc/49A9-YQFF].

48. In response to this rapidly growing harm, Consumer Reports and several other groups have called on the FTC "to create clear guidance to address the issue of software tethering which leads to several consumer harms, including . . . companies selling connected devices only to render them nonfunctional later using software." This practice of "'bricking' a connected device purchased by a consumer in many cases [is an] unfair and deceptive practice[.]"[5]

49. The FTC Letter explains "how companies are using software tethers in their devices to infringe on a consumer's right to own the products they buy."[6] "This software-server connection tethers the device to the manufacturer, giving the manufacturer post-purchase control of the software and changing the nature of ownership."[7] As a result, "[c]onsumers increasingly face a death by a thousand cuts as connected products they purchase lose their software support or advertised features that may have prompted the original purchase."[8]

50. Additional recent examples of these practices in the consumer marketplace include Amazon's Halo health and wellness wearable devices, Spotify's connected Car Thing device that lasted only 22 months, the iKamand temperature regulating device that was discontinued within the same year, and Google's Dropcam cameras, to name a few.[9]

## IV. Online Consumer Complaints About Amazon's Bricking of the First- and Second-Generation Fire TV Stick Devices

51. Amazon is well aware of widespread consumer dissatisfaction because of its unilateral decision to brick its first- and second-generation Fire TV Stick devices.

52. Below is just a small sampling of the online consumer complaints about this issue:

a. "It's really a question of how long it works as intended. How long before your nice fresh snappy fire stick starts getting slow and glitchy because of the updates that Amazon forces. In my experience it starts slowing down about 18 months after purchase and by the time you've added [sic] for about 2 and 1/2 years, you're looking at buying a new

---

[5] FTC Letter, Sept. 5, 2024, available at https://advocacy.consumerreports.org/research/group-letter-ftc-software-tethering/ [https://perma.cc/GKS7-SSNQ].

[6] *Id.*

[7] *Id.* (citations omitted).

[8] *Id.*

[9] *Id.* (citations omitted).

one on prime day...which is probably exactly as Amazon intends it." [Posted on Amazon.com]

b. "Firestick from 2017 will not work properly in 2023. Freezes, gets 'stuck,' says there is an issue with the internet when there is not (it is connected to the fastest internet there is and its still slow as hell), won't work consistently.... clumsy, slow, buggy tech. Get a Roku." [Posted on Amazon.com]

c. "I have two firesticks that were purchased two months apart in 2015. Recently, I had to constantly restart them. A few weeks ago, one completely stopped working. Today the other one stopped working. So, I guess it's about 5 years for mine." [Posted on Amazon.com]

d. "I only used my firestick for streaming and lost it in my boxes during a move, found it recently and it was super slow after all the updates. I did a factory reset and it was unbearable how laggy it was. The 4K fires stick is snappy and great but I'm disappointed when companies use planned obsolences [sic] with their older products forcing people to upgrade ." [Posted on Reddit]

e. "Does anyone else think that Amazon purposely slow firesticks down after a certain period so new ones are purchased? I've had a few over the years, been lightning fast from day 1 then slows and slows and slows." [Posted on Reddit]

## V. Plaintiff's Experience

53. In October 2018, Plaintiff purchased two second-generation Fire TV Stick devices from third-party retailer Best Buy in Palmdale, California. Plaintiff purchased the devices because the packaging stated that the "ultra-fast processer" would allow him to have "[a]dvanced [s]treaming" and find his favorites "instantly" "with fast fluid performance" and no "buffering." Plaintiff purchased the devices because the packaging stated the devices had "[i]nstant voice search" with Alexa Voice Remote.

54. Plaintiff was not informed at or before the time of purchase that the devices' core "instant" streaming functionality could be reduced or eliminated for any reason, at any time, without compensation to purchasers, even when the physical components of the device continued to function without issue. Plaintiff relied on Amazon's omission of the truth about its ability to throttle the Fire TV Stick's functionality. If it had been disclosed to him that in a few years the Fire TV Stick devices would hardly function and would no longer be "ultra-fast" "instant" streaming and voice command devices, he would not have purchased the Fire TV Stick or would have paid substantially less.

55. Just a few years after he purchased the devices, Plaintiff experienced a significant decline in their speed and functionality. Specifically, Plaintiff began to experience the following issues when using

his Fire TV Stick devices: (1) a significant, noticeable decrease in streaming speed; (2) an inability to navigate through digital menus on the device without experiencing significant delay; and (3) a significant increase in loading times for applications bundled with the device when Plaintiff attempted to use those applications.

56. After first taking notice of these performance issues, Plaintiff observed that the issues gradually worsened for several months thereafter.

57. Ultimately, because these issues rendered the devices Plaintiff purchased nearly inoperable, Plaintiff purchased newer models of the Fire TV Stick devices in 2024.

58. Plaintiff reasonably relied on Amazon's misrepresentations and omissions concerning the functionality of its Fire TV Stick devices (1) because Amazon did not tell him prior to purchase that the devices' core software functionality would be severely disabled at Amazon's discretion long before the useful life of the hardware of the device had expired and (2) because, at the point of purchase, Amazon advertised the devices' "ultra-fast processor," "[a]dvanced [s]treaming" and "fast and fluid performance," and "instant" streaming, all of which were important to Plaintiff's decision to purchase the Fire TV Stick devices.

59. Plaintiff would not have purchased a Fire TV Stick device, or would have paid substantially less for it, had he known that Amazon could severely compromise the device's core streaming functionality by discontinuing software updates for any reason, at any time, without compensation to purchasers even when the physical device continued to function.

## CLASS ALLEGATIONS

60. Plaintiff brings this action individually and on behalf of the following Nationwide Classes:

> **First-Generation Class**: All persons who reside in the United States who purchased a first-generation Fire TV Stick device and still owned the device as of January 1, 2023.
>
> **Second-Generation Class**: All persons who reside in the United States who purchased a second-generation Fire TV Stick device and still owned the device as of April 1, 2023.

61. Plaintiff also brings this action on behalf of two subclasses of the above-defined Nationwide Classes consisting of consumers residing in California (the "California Subclasses").

62. Unless otherwise noted, the Nationwide Classes and California Subclasses are collectively

referred to herein as the "Class."

63. Excluded from the Class are Defendants' current or former officers, directors, and employees; counsel for Plaintiff and Defendants; and the judicial officer to whom this lawsuit is assigned.

64. Plaintiff reserves the right to modify or amend class definitions as this litigation proceeds.

65. **Numerosity and Ascertainability**: The members of the Classes are so numerous that joinder of all members is impracticable. The precise number of Class Members is unknown to Plaintiff at this time, but Plaintiff anticipates that the number and identities of Class Members can be determined through appropriate discovery in the possession of Defendants and/or third-party retailers.

66. **Existence and Predominance of Common Questions of Law and Fact**: This action involves common questions of law and fact which predominate over any questions affecting individual Class Members. These common questions include, but are not limited to, the following:

a. Whether Amazon improperly "bricked" first- and second-generation Fire TV Stick devices and forced them into obsolescence;

b. Whether Amazon's alleged misconduct constitutes violations of the laws asserted herein;

c. Whether Amazon's alleged misconduct constitutes a breach of contract and of the implied covenant of good faith and fair dealing;

d. Whether Plaintiff and Class Members sustained monetary loss and the proper measure of that loss; and

e. Whether Plaintiff and Class Members are entitled to other appropriate remedies.

67. **Typicality**: Plaintiff's claims are typical of the members of the Classes because, *inter alia*, all Class Members have been deceived (or were likely to be deceived) and have suffered similar injury by the same wrongful practices by Defendants. Plaintiff's and Class Members' claims all arise from the same wrongful practices and course of conduct and are based on the same legal theories of liability.

68. **Adequacy**: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Classes.

69. **Superiority**: A class action is superior to other methods for resolving this controversy. Because the amount of restitution, damages, and/or penalties to which Class Members may be entitled is

low in comparison to the expense and burden of individual litigation, it would be impracticable for Class Members to redress the wrongs done to them without a class action. Furthermore, on information and belief, many Class Members do not know that their legal rights have been violated. Class Members would also conserve judicial resources and void the possibility of inconsistent judgments.

70. **Final Declaratory or Injunctive Relief**: Amazon has acted or refused to act on grounds generally applicable to each of the Class members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

71. **Particular Issues**: Plaintiff's claims consist of particular issues that are common to all members of the Class and capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Breach of Contract Including Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Nationwide Classes; Alternatively, on Behalf of Plaintiff and the California Subclasses)

72. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

73. Plaintiff and Class members entered into a contract with Amazon when they purchased their first- and second-generation Fire TV Stick devices.

74. Amazon breached the contract when it stripped the devices of all software support and updates, thereby depriving the devices of the functionality they were advertised to have at the point of sale.

75. In addition, a covenant of good faith and fair dealing is implied by law in all contracts and requires that Amazon exercise contractual discretion honestly and in good faith.

76. The covenant of good faith and fair dealing requires that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

77. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.

78. Amazon breached the covenant of good faith when it frustrated the purpose of the contract to provide instant and fast streaming, as well as instant voice search for the second-generation devices.

Amazon exercised its discretion in bad faith to unilaterally and intentionally dismantle the core advertised feature (namely, high-speed streaming) of the first- and second-generation Fire TV Stick devices by ending their software support, thereby rendering the devices largely obsolete before the end of their physical useful life.

79. In so doing, Amazon undermined Plaintiff's and Class Members' right to receive the benefit of the bargain.

80. Plaintiff and Class Members have performed or substantially performed all obligations imposed on them under the contract.

81. Plaintiff and Class Members have sustained damages because of Amazon's breach of the contract and breach of the implied covenant of good faith and fair dealing.

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (the "UCL"), Unfair Prong**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclasses)**

82. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

83. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Amazon's conduct related to deceptively representing that its devices provide certain features, capabilities, services and uses violates the statute's "unfair" prong.

84. The UCL imposes strict liability. Plaintiff need not prove that Amazon intentionally or negligently engaged in unfair business practices—only that such practices occurred.

85. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

86. Amazon committed unfair business acts and practices in violation of Cal. Bus. & Prof. § 17200, *et seq*., by stripping its first- and second-generation Fire TV Stick devices of their ability to function properly before the expiration of their useful life, a practice known as "bricking."

87. "Bricking" has been specifically called out by the FTC as a potentially unfair business

practice because consumers have no choice in the matter.

88. As explained by the FTC, the "failure to provide software updates or the failure to disclose the duration of a product's software support" constitutes "unfair" conduct and "violates the FTC Act" because it results in unavoidable harm to consumers and causes them substantial injury.

89. Amazon's affirmative action of stripping its devices of their ability to function properly before the expiration of their useful life imposes a financial detriment to consumers while benefitting Amazon.

90. Amazon caused consumers substantial injury by promising specific software features and then severely throttling the performance of its devices through discontinued software updates and support, causing consumers to lose money as a result. The substantial injury to consumers outweighs any countervailing benefit to Amazon. Defendants' acts and practices constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

91. The harm to Plaintiff and the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the unfair conduct described herein.

92. Had Plaintiff and Class Members known that Defendants would render their devices obsolete by removing all software support and updates, they would have paid less for the devices or would not have purchased them at all.

93. As a direct and proximate result of Amazon's unfair practices, Plaintiff and Class Members have suffered damages.

94. Amazon has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

95. **Inadequate remedy at law.** Legal remedies available to Plaintiff and Class Members are inadequate because they are not as equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class Members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not

limited to the amount of money Defendants wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiff seeks equitable remedies in the alternative to legal ones, which are yet uncertain.

96. Legal remedies available to Plaintiff and Class Members are also inadequate because they do not address likely future harms. As of the date of this filing, Amazon has failed to restore software updates and support for first- and second-generation Fire TV Stick devices. If Amazon is not ordered to take these or similar actions, Amazon will continue to injure Plaintiff and Class Members through the misconduct alleged herein.

**THIRD CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (the "UCL"), Fraudulent Prong**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclasses)**

97. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

98. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Amazon's conduct related to deceptively representing that its first- and second-generation Fire TV Stick devices provide certain features, capabilities, services and uses violates the statute's "fraudulent" prong.

99. The UCL imposes strict liability. Plaintiff need not prove that Amazon intentionally or negligently engaged in fraudulent business practices—only that such practices occurred.

100. A business practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

101. Amazon committed fraudulent business acts and practices in violation of Cal. Bus. & Prof. § 17200, *et seq*., by its misrepresentations and omissions as described above.

102. Plaintiff and Class Members acted reasonably when they relied on Amazon's

misrepresentations and omissions in purchasing their devices.

103. Had Plaintiff and Class Members known that Defendants would render the first- and second-generation Fire TV Stick devices obsolete by removing all software support and updates, they would have paid less for the devices or would not have purchased them at all.

104. As a direct and proximate result of Amazon's fraudulent practices, Plaintiff and Class Members have suffered damages.

105. Amazon has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

106. **Inadequate remedy at law**. Legal remedies available to Plaintiff and Class Members are inadequate because they are not as equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class Members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiff seeks equitable remedies in the alternative to legal ones, which are yet uncertain.

107. Legal remedies available to Plaintiff and Class Members are also inadequate because they do not address likely future harms. As of the date of this filing, Amazon has failed to restore software updates and support for first- and second-generation Fire TV Stick devices. If Amazon is not ordered to take these or similar actions, Amazon will continue to injure Plaintiff and Class Members through the misconduct alleged herein.

///

**FOURTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law (the "UCL"), Unlawful Prong**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclasses)**

108. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

109. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Amazon's conduct related to deceptively representing that its first- and second-generation Fire TV Stick devices provided certain features, capabilities, services and uses violates the statute's "unlawful" prong.

110. The UCL imposes strict liability. Plaintiff need not prove that Amazon intentionally or negligently engaged in unlawful business practices—but only that such practices occurred.

111. A business practice is "unlawful" under the UCL if it violates any other law or regulation.

112. Amazon's conduct constitutes an "unlawful" act under the UCL, because as alleged herein, it also constitutes violations of the other statutes such as the CLRA.

113. As a direct and proximate result of Amazon's unlawful practices, Plaintiff and Class Members have suffered damages.

114. Amazon has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

115. **Inadequate remedy at law**. Legal remedies available to Plaintiff and Class Members are inadequate because they are not as equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff and Class Members fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim

cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiff seeks equitable remedies in the alternative to legal ones, which are yet uncertain.

116. Legal remedies available to Plaintiff and Class Members are also inadequate because they do not address likely future harms. As of the date of this filing, Amazon has failed to restore software updates and support for first- and second-generation Fire TV Stick devices. If Amazon is not ordered to take these or similar actions, Amazon will continue to injure Plaintiff and Class Members through the misconduct alleged herein.

**FIFTH CAUSE OF ACTION**
**Violation of California's Consumers Legal Remedies Act (the "CLRA")**
**Cal. Civ. Code §§ 1770, *et seq.***
**(On Behalf of Plaintiff and the California Subclasses)**

117. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

118. Plaintiff and each Class Member are "consumers" as defined by California Civil Code § 1761(d). Defendants' first- and second-generation Fire TV Stick devices are "goods" within the meaning of Cal. Civ. Code § 1761(a). Defendants' sales of the devices were "transactions" within the meaning of Cal. Civ. Code § 1761(e).

119. Amazon violated the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and Class Members which were intended to result in, and did result in, the sale of the first- and second-generation Fire TV Stick devices:

a. "Representing that goods or services have . . . characteristics . . .[and] uses . . . that they do not have" (a)(5);

b. "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (a)(16).

120. Specifically, Amazon made misleading representations to consumers that the first- and second-generation Fire TV Stick devices had specific features (namely, high-speed streaming functionality) and omitted the material fact that it could severely diminish the first- and second-generation Fire TV Stick devices' streaming functionality before the end of their useful life.

121. Amazon was under a duty to Plaintiff and Class Members to disclose that it could or would

render the first- and second-generation Fire TV Stick devices less functional because Amazon made affirmative statements to the contrary when it sold the device and touted its advertised benefits without time limitation.

122. Amazon's material misrepresentations and omissions alleged herein were material to and relied upon by reasonable consumers when deciding whether to purchase their devices or pay a lesser price for a comparable device.

123. Had Plaintiff and Class Members known that Amazon would severely diminish the advertised functionality of their devices, they would not have purchased them or would have paid much less for them.

124. Plaintiff and Class Members have been damaged because of Amazon's violations of the CLRA as alleged herein.

125. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. If Defendants fail to comply, Plaintiff will seek all available remedies. For now, Plaintiff seeks only public injunctive relief with respect to this claim.

**SIXTH CAUSE OF ACTION**
**Violation of Washington Consumer Protection Act (the "WCPA")**
**Wash. Rev. Code §§ 19.86, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Classes)**

126. Plaintiff repeats and incorporates all the preceding allegations as if fully set forth herein.

127. Amazon's unlawful conduct emanated from its headquarters in the State of Washington and therefore it is appropriate to apply Washington law on behalf of the Nationwide Classes.

128. Defendants are "persons" within the meaning of the WCPA and conduct "trade" and "commerce" within the meaning of the WCPA. Plaintiff and Class Members are "persons" within the meaning of the WCPA. Monies Defendants acquired from Plaintiff and Class Members by means of the unlawful practices set forth herein constitute "assets" within the meaning of the WCPA.

129. Amazon's actions as described herein are unfair and deceptive within the meaning of the WCPA. Specifically, Amazon: (1) stripped first- and second-generation Fire TV Stick devices of their

advertised high-speed streaming functionality long before the expiration of their useful life, a practice known as "bricking"; and (2) made material misrepresentations and omissions as described herein concerning the functionality of the devices.

130. Amazon's actions as described herein have the tendency or capacity to mislead, and did mislead, reasonable consumers.

131. Amazon was under a duty to Plaintiff and Class Members to disclose that it could or would render the first- and second-generation Fire TV Stick devices less functional because Amazon made affirmative statements to the contrary when it sold the device and touted its advertised benefits without time limitation.

132. Amazon's material misrepresentations and omissions alleged herein were material to and relied upon by reasonable consumers when deciding whether to purchase their devices or pay a lesser price for a comparable device.

133. Had Plaintiff and Class Members known that Amazon would severely diminish the advertised functionality of their devices, they would not have purchased them or would have paid much less for them.

134. Amazon's actions are unfair in that they offend public policy and are immoral, unethical, oppressive and unscrupulous and cause substantial injury to consumers.

135. Amazon's actions as described herein occur in Amazon's trade or business and have injured and deceived a substantial portion of the public. Amazon's general course of conduct has an impact on the public interest, and the acts complained of herein are ongoing.

136. Amazon's conduct has injured Plaintiff and Class Members in that Plaintiff and Class Members lost money because of Amazon's unfair and deceptive practices.

137. Plaintiff and Class Members are entitled to an order enjoining the conduct complained of herein, actual damages, treble damages, costs of suit, a reasonable attorneys' fee, and such further equitable relief as the Court may deem proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in his favor and against Defendants, as follows:

A. Certifying the Classes as requested herein, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;

B. Awarding monetary and statutory damages as appropriate;

C. Ordering Defendants to disgorge and make restitution of all monies Defendants acquired by means of the unlawful practices set forth above;

D. Awarding declaratory and public injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices set forth herein;

E. Ordering Defendants to distribute a refund to each Class Member;

F. Awarding Plaintiff and Class Members their costs and expenses incurred in the action, including reasonable attorneys' fees and both pre- and post-judgment interest on any amounts awarded; and

G. Providing such further relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 31, 2026

**KALIELGOLD PLLC**

By: *Sophia Goren Gold*

Sophia Goren Gold
Jeffrey D. Kaliel

**TYCKO & ZAVAREEI LLP**
Annick M. Persinger

*Attorneys for Plaintiff and the Putative Class*